UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BENNETT CHOATE | CIVIL ACTION NO. 6:16-CV-01370 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| CITY OF ABBEVILLE | BY CONSENT OF THE PARTIES |

## **MEMORANDUM RULING**

Currently pending is the motion for summary judgment (Rec. Doc. 30), which was filed by the sole defendant, the City of Abbeville ("the City"). The motion is unopposed. For the reasons fully explained below, the motion is GRANTED.

### **BACKGROUND**

This case arises out of an incident which occurred at Culpepper's Saloon, in Abbeville, Louisiana, on October 3, 2015. Just before 2:00 a.m., officers with the Abbeville Police Department, including Sergeant John Castille and Officer Jimmie Pigron, were dispatched to Culpepper's Saloon in reference to a complaint of a fight.[1] Upon arriving at Culpepper's, Sergeant Castille encountered Bennett Choate, the plaintiff, and his brother, Boyd Choate, standing near the front entrance.[2] In an

---

[1] Rec. Doc. 30-2, p. 1, ¶ 1; Rec. Doc. 32, p. 4.
[2] Rec. Doc. 30-2, p. 1, ¶ 2; Rec. Doc. 32, p. 9; Rec. Doc. 1, p. 2, ¶ 9.

effort to disperse the crowd of Culpepper's patrons, officers told the plaintiff to go home; however, the plaintiff refused to leave. Sergeant Castille told the plaintiff to leave Culpepper's approximately four more times, to which the plaintiff responded "Fuck you, get away from me."[3]

At that time, Sergeant Castille advised the plaintiff that he was under arrest for resisting an officer.[4] The plaintiff was directed to put his hands behind his back and was handcuffed. As Sergeant Castille attempted to escort the plaintiff to a police unit, the plaintiff began pushing back in the opposite direction and stating "I'm not going to jail."[5] The plaintiff then laid down on the wooden walkway and refused to move. When Sergeant Castille ordered the plaintiff to stand up, he again replied "fuck you, I'm not going to jail."[6] The plaintiff repeatedly yelled "what am I arrested

---

[3] Rec. Doc. 30-2, p. 1, ¶¶ 3-4; Rec. Doc. 32, p. 9.
[4] Rec. Doc. 30-2, p. 1, ¶ 5; Rec. Doc. 32, pp. 5, 9.
[5] Rec. Doc. 30-2, p. 1, ¶¶ 6-7; Rec. Doc. 32, p. 9.
[6] Rec. Doc. 30-2, p. 2, ¶ 8; Rec. Doc. 32, p. 9. During the plaintiff's deposition, the transcript of which is attached to the City's motion for summary judgment, he claimed that, "after they put [him] in handcuffs," he was "shoved down the stairs backwards[, and] rolled down the stairs and landed on [his] stomach." [Rec. Doc. 30-5, p. 13]. The City points to the body camera footage, also attached to the motion, to refute the plaintiff's claim in this regard. Although the Court's review of the attached footage does not indicate any clear evidence of the incident, Local Rule 56.2 provides, in pertinent part, that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Accordingly, the City's facts are deemed admitted in light of the plaintiff's lack of opposition to the instant motion.

for?" while continuing to refuse the officer's orders to stand up.[7] Sergeant Castille again advised the plaintiff that he was under arrest for resisting an officer.[8]

Despite the plaintiff continuing to refuse the officers' orders, Sergeant Castille and Officer Pigron were finally able to get the plaintiff up from the ground in order to escort him to the police unit. While walking to the police unit, the plaintiff continued to push back against the officers and, along the way, pushed Sergeant Castille into a parked car and "mule kicked" Officer Pigron, causing a previous wound on Pigron's leg to reopen.[9] The plaintiff was eventually charged with two counts of resisting an officer and one count of resisting an officer with force or violence, in violation of Louisiana Revised Statutes 14:108 and 14:108.2 respectively, and transported to the Vermillion Parish Correctional Center.[10]

On September 30, 2016, the plaintiff filed suit against the City, pursuant to 42 U.S.C. §§ 1983 and 1988,[11] the Fourth and Fourteenth Amendments to the United States Constitution, as well as state law claims, alleging that he was arrested without probable cause and subjected to excessive force when he was arrested on October 3,

---

[7] Rec. Doc. 30-2, p. 2, ¶ 9; Rec. Doc. 32, p. 9.
[8] *Id*.
[9] Rec. Doc. 30-2, p. 2, ¶¶ 10-11; Rec. Doc. 32, p. 9.
[10] Rec. Doc. 32, pp. 5-6, 10.
[11] The plaintiff's reference to 42 U.S.C. § 1988 is related to his request for attorney's fees "in the amount of not less than $50,000.00." Rec. Doc. 1, pp. 3-4, ¶¶ 18, 20.

2015.[12] He sued only the City, choosing not to sue the officers in their individual capacity. According to the Complaint, the plaintiff alleges that he "was minding his own business when suddenly a fight broke out between [] two women."[13] The plaintiff further alleges that he walked out onto Culpepper's porch to see what was going on when an Abbeville police officer "[s]uddenly . . . came up to him and placed him under arrest for resisting an officer and resisting an officer with force."[14] He therefore claims that the arrest was without probable cause and further alleges that, once he was handcuffed, the arresting officer pushed the plaintiff forward, "causing him to fall down the stairs seriously injuring his neck."[15] He then claims that he was "carried by several police officers . . . to a waiting patrol car," which caused embarrassment and mental anguish.[16] The plaintiff alleges that the conduct of the City and its employees "was deliberate and rose to the level of callous indifference and was the proximate cause of the violation of Plaintiff's federally protected rights," for which he seeks exemplary damages to punish the City and deter future such conduct, in addition to attorney's fees.[17]

---

[12] Rec. Doc. 1.
[13] Rec. Doc. 1, p. 2, ¶ 8.
[14] *Id*. at ¶¶ 9-10.
[15] *Id*., at ¶¶ 11-12.
[16] *Id*. at p. 3, ¶ 14.
[17] *Id*. at ¶¶ 17-18.

4

The City filed the instant motion for summary judgment, arguing that the plaintiff has failed to allege that the City has in effect any policy, custom or practice which led to any alleged deprivation of his constitutional rights, in order to support *Monell* liability, nor can the City be held liable under a theory of *respondeat superior* for any alleged torts of its employees.[18] The City further argues that it has in place sufficient policies, procedures and training, regarding probable cause and use of force; the plaintiff was arrested on adequate probable cause; the officers did not use excessive force during the plaintiff's arrest; and the plaintiff has failed to state a claim upon which relief may be granted as to the Fourteenth Amendment, as the City did not act with deliberate indifference to the constitutional rights of the plaintiff.[19] And, finally, the City argues that the plaintiff's state law claims fail, because he can neither establish that he was arrested without probable cause nor that the force used against him was unreasonable.[20]

## ANALYSIS

**A.    THE SUMMARY JUDGMENT STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the

---

[18] Rec. Doc. 30, pp. 1-2, ¶¶ 3-4.
[19] *Id*. at pp. 2-3, ¶¶ 5-9.
[20] *Id*. at p. 3, ¶ 10.

moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[21] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[22]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[23] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[24] All facts and inferences are construed in the light most favorable to the nonmoving party.[25]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).
[22] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton,* 232 F.3d at 477.
[23] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[24] *Washburn*, 504 F.3d at 508.
[25] *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

claim.[26] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[27]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[28] The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[29] "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper."[30]

A motion for summary judgment "cannot be granted simply because there is no opposition."[31] When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when a prima facie showing for entitlement to judgment is made.[32]

---

[26] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 325).
[27] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).
[28] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).
[29] *Id.*
[30] *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[31] *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995); *see also Calais v. Theriot*, 589 F. App'x 310, 311 (5th Cir. 2015) (per curiam).
[32] *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

**B.    THE APPLICABLE LAW**

Title 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978), the Supreme Court established that municipalities and other local governmental bodies are "persons" within the meaning of § 1983. Thus, the City may properly be named in a § 1983 lawsuit under certain circumstances. However, "[c]ities are not liable for constitutional violations committed by city employees unless those violations result directly from a municipal custom or policy."[33] "Liability under the doctrine of *respondeat superior* is not cognizable in § 1983 actions."[34] "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."[35]

---

[33] *Sanders-Burns v. City Of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)).
[34] *Id.* (citing *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002)); *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 818 (1985) (plurality opinion).
[35] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Accordingly, to prevail against a municipality under § 1983, in addition to establishing a constitutional deprivation, a plaintiff must show that the municipality's policy or custom caused the constitutional deprivation.[36] "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[37]

C. **CHOATE HAS FAILED TO ESTABLISH MUNICIPAL LIABILITY UNDER *MONELL***

"As is well established, every *Monell* claim requires 'an underlying constitutional violation.'"[38] The plaintiff alleges that he was arrested without probable cause and subjected to excessive force during his arrest on October 3, 2015. As to each allegation, the Fourth Amendment analysis turns on reasonableness. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."[39] Likewise, "the 'reasonableness' inquiry in an excessive force case is an objective one: the

---

[36] *See Monell*, 436 U.S. at 690–91, 694; *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002).
[37] *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski*, 237 F.3d at 578).
[38] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex.*, 138 S. Ct. 510 (2017) (citations omitted).
[39] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted).

question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[40]

In this case, the following facts are deemed admitted for purposes of the City's motion for summary judgment.[41] The officers were dispatched to Culpepper's, just before 2:00 a.m. and closing time, in response to a complaint of a fight. Given the hour and location, the officers could expect to encounter intoxicated patrons; therefore, they attempted to disperse the crowd and ask uninvolved individuals to leave the scene, in order to neutralize the scene and keep the peace. The plaintiff refused the officers' commands and became physically aggressive, in opposition to the officers' commands. In light of these facts, the Court doubts whether the plaintiff could establish a constitutional deprivation; however, for purposes of the instant

---

[40] *Graham v. Connor*, 490 U.S. 386, 397 (1989).
[41] As explained above, the Court experienced some difficulty in reviewing the video footage. There are four separate video captures, each of which contains audio interference, rendering it difficult – if not impossible – to understand the audio throughout the video captures. Furthermore, the videos appear to be limited to dash camera footage, rather than a combination of dash and body camera footage. Nonetheless, the videos do corroborate the late hour, large crowd, and at least some evidence of the plaintiff's combative language towards the officers involved. *See Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.") (citing *Scott v. Harris*, 550 U.S. 372 (2007)). Regardless of technical difficulties and the resultant limitations on the Court's reliance on the videos, the Court may, as previously noted, accept as undisputed the facts set forth in support of the motion and grant summary judgment when a prima facie showing for entitlement to judgment is made. *See Eversley, supra,* at n. 32.

motion, the Court declines to rule on that threshold issue. Rather, assuming *arguendo* that the plaintiff could establish that the officers lacked probable cause and/or subjected him to excessive force, his *Monell* claim nonetheless fails.

As explained, "[m]unicipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]"[42] "Official policy establishes culpability, and can arise in various forms."[43] Here, the plaintiff does not claim any particular theory of liability. That is, the plaintiff fails to allege whether the City's liability is based on a written policy, an unwritten custom, or inadequate training. Accordingly, regardless of the theory pursued, the plaintiff cannot establish *Monell* liability.

"An official policy, for purposes of § 1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'"[44] "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be

---

[42] *Pineda*, 291 F.3d at 328 (quoting *Monell*, 436 U.S. at 694).
[43] *Peterson*, 588 F.3d at 847.
[44] *Brown*, 219 F.3d at 457 (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).

said to be those of the municipality."[45] Here, aside from alleging that, at all times relevant to this lawsuit, the City "operated a municipal law enforcement department with an elected Chief of Policy and various police officers," the Complaint fails to mention the word "policy" or identify any City policy which may have acted as the "moving force" behind the alleged constitutional violations in this case.[46] "There is simply no allegation, not even a threadbare recital, of any policy that exists in the City[.]"[47]

The City, on the other hand, has come forward with excerpts from the Abbeville Police Department's Policies and Procedures Manual, in place at the time of the alleged incident, regarding lawful arrest procedures and use of force.[48] The Abbeville Police Department policies were published and distributed to all officers within the department.[49] As relevant to this case, the policies prohibit, *inter alia*, the use of excessive force and illegal seizures.

Regarding lawful arrest procedures, the Abbeville Police Department had in force and effect General Order 209, entitled "Arrest Procedures – Arrests (General),"

---

[45] *Bd. of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997) (quoting *Monell*, 436 U.S. at 694).
[46] Rec. Doc. 1, p. 2, ¶ 5.
[47] *Dyas v. City of Shreveport*, No. 16-1607, 2017 WL 3711898, at *4 (W.D. La. Aug. 28, 2017).
[48] Rec. Doc. 30-3, pp. 12-13 (citing Rec. Doc. 30-7 (*in globo*)).
[49] Rec. Doc. 30-3, p. 13.

which includes definitions of the terms "arrest" and "probable cause," pursuant to Louisiana's Code of Criminal Procedure.[50] Constitutionally sufficient procedures for arrests, both with and without a warrant, are outlined in General Order 209.[51] Likewise, regarding the use of force, the Abbeville Police Department had in force and effect General Order 118, entitled "Non-Lethal Force," pursuant to which the proper "use of force continuum" is described.[52] General Order 118 states, in pertinent part: "The use of force should follow a prescribed continuum: physical presence, verbal warning, verbal command, soft empty-hand control, hard empty-hand control, aerosol subject restraint/intermediate weapons, and finally, when appropriate, the use of deadly force."[53] Per the policy, it is the responsibility of each officer to become knowledgeable of and implement the use of force continuum, in accordance with his or her training, in any given case.[54]

In the absence of any alleged official policy, the plaintiff could alternatively establish the first prong by establishing "'[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that

---

[50] Rec. Doc. 30-7, pp. 1-5; Rec. Doc. 30-3, p. 13.
[51] *Id*.
[52] Rec. Doc. 30-7, pp. 6-9; Rec. Doc. 30-3, p. 13.
[53] Rec. Doc. 30-7, p. 6.
[54] *Id*.

13

fairly represents municipal policy.'"[55] "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[56] "Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."[57] Where there is no "formal legal declaration" of policy, the Fifth Circuit has required evidence of "a persistent pattern of conduct," in order to establish a custom.[58]

Again, the plaintiff makes no allegation of any widespread practice or pattern of conduct which could constitute municipal policy, much less any actual or constructive knowledge of any such custom which could be attributable to the City or its governing body. Even if the plaintiff had established that the officers relevant to *this* case had deprived him of his constitutional rights, "[i]solated violations are not the persistent, often repeated, constant violations that constitute custom and policy."[59] It is therefore clear that the plaintiff's *Monell* claim fails at the first prong, and the City is entitled to summary judgment on the plaintiff's § 1983 claims. Given

---

[55] *Brown*, 219 F.3d at 457 (quoting *Bennett*, 735 F.2d at 862).
[56] *Brown*, 520 U.S. at 404 (quoting *Monell*, 436 U.S. at 690-91).
[57] *Pineda*, 291 F.3d at 328 (citation omitted).
[58] *Richardson v. Oldham*, 12 F.3d 1373, 1382-83 (5th Cir. 1994); *see also Pineda*, 291 F.3d at 329.
[59] *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015).

that the individual officers are not parties to this suit and the City is the only named defendant, the plaintiff's federal claims are therefore subject to dismissal.

Having determined that the plaintiff's federal claims should be dismissed, the remaining question is whether the Court should exercise supplemental jurisdiction, pursuant to the factors listed in 28 U.S.C. § 1367(c), over the state law claims.[60] None of the factors is dispositive, and courts should also consider judicial economy, convenience, fairness, and comity.[61] However, the Supreme Court has repeatedly instructed that the third statutory factor—dismissal of all federal claims—provides "a powerful reason to choose not to exercise jurisdiction."[62] In the Fifth Circuit, as a general rule, courts should decline to exercise supplemental jurisdiction "when all federal claims are dismissed or eliminated prior to trial."[63] Accordingly, finding no exceptional circumstances, the Court declines to exercise supplemental jurisdiction over the state law claims in this case.

---

[60] Pursuant to 28 U.S.C. § 1367(c)(1)-(4): "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

[61] *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

[62] *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . , the state claims should be dismissed as well.").

[63] *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

## CONCLUSION

For the reasons fully explained above, the unopposed motion for summary judgment (Rec. Doc. 30), which was filed by the defendant, the City of Abbeville is hereby GRANTED, and the plaintiff's federal claims are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the plaintiff's state law claims are hereby DISMISSED WITHOUT PREJUDICE.

Signed at Lafayette, Louisiana on this 10th day of August, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE